**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
RYAN O'DELL,                              :
                                          :
                Plaintiff,                :   Civil Action No. 1:21-cv-8171-
                                          :
v.                                        :
                                          :   **COMPLAINT FOR VIOLATIONS OF**
HILL-ROM HOLDINGS, INC., WILLIAM G.       :   **SECTIONS 14(a) AND 20(a) OF THE**
DEMPSEY, JOHN P. GROETELAARS,             :   **SECURITIES EXCHANGE ACT OF**
GARY L. ELLIS, STACY ENXING SENG,         :   **1934**
MARY GARRETT, JAMES R. GIERTZ,            :
WILLIAM H. KUCHEMAN, GREGORY J.           :   **JURY TRIAL DEMANDED**
MOORE, FELICIA F. NORWOOD, and            :
NANCY M. SCHLICHTING,                     :
                                          :
                Defendants.               :
---------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Hill-Rom Holdings, Inc. ("Hill-Rom

or the "Company") and the members Hill-Rom board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with

the proposed acquisition of Hill-Rom by Baxter International Inc. ("Baxter") and its affiliates.

2.      Defendants have violated the above-referenced Sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on October 1, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Bel Air Subsidiary, Inc. ("Merger Sub"), a wholly owned subsidiary of Baxter, will merge with and into Hill-Rom with Hill-Rom surviving the merger and becoming a direct wholly owned subsidiary of Baxter (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Hill-Rom common share issued and outstanding will be converted into the right to receive $156.00 in cash (the "Merger Consideration").

3.     As discussed below, Defendants have asked Hill-Rom stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Goldman Sachs & Co. LLC ("Goldman Sachs") and BofA Securities, Inc. ("BofA") in support of their fairness opinions, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.     It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Hill-Rom stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Hill-Rom common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant William G. Dempsey has served as a member of the Board since 2014 and is the Chairman of the Board.

11.     Individual Defendant John P. Groetelaars has served as a member of the Board since 2018 and is the Company's President and Chief Executive Officer.

12.     Individual Defendant Gary L. Ellis has served as a member of the Board since 2017.

13.     Individual Defendant Stacy Enxing Seng has served as a member of the Board since 2015.

14.     Individual Defendant Mary Garrett has served as a member of the Board since 2017.

15.     Individual Defendant James R. Giertz has served as a member of the Board since 2009.

16.     Individual Defendant William H. Kucheman has served as a member of the Board since 2013.

17.     Individual Defendant Gregory J. Moore has served as a member of the Board since 2019.

18.     Individual Defendant Felicia F. Norwood has served as a member of the Board since 2020.

19.     Individual Defendant Nancy M. Schlichting has served as a member of the Board since 2017.

20.     Defendant Hill-Rom is incorporated in Indiana and maintains its principal offices at 130 E. Randolph Street, Suite 1000, Chicago, Illinois 60601.  The Company's common stock trades on the New York Stock Exchange under the symbol "HRC."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

23.     Hill-Rom operates as a medical technology company worldwide.  It operates through Patient Support Systems, Front Line Care, and Surgical Solutions segments. The Company offers medical surgical beds, intensive care unit beds, and bariatric patient beds, patient mobility

solutions, non-invasive therapeutic products and surfaces, and information technologies and software solutions, as well as sells equipment service contracts for its capital equipment. It also provides patient monitoring and diagnostics products, such as patient exam and diagnostics, patient monitoring, diagnostic cardiology, vision screening, and diagnostics products; and respiratory health products comprising non-invasive devices that provide respiratory support and assist patients in the mobilization of retained blockages. In addition, the Company offers surgical solutions that include tables, lights, and pendants; and positioning devices for use in shoulder, hip, spinal, and lithotomy surgeries, as well as platform-neutral positioning accessories for operating room tables. It sells and rents products to acute and extended care facilities through direct sales force and distributors; sells and rents products directly to patients in the home; and sells products to primary care facilities through distributors. Hill-Rom was founded in 1915 and is headquartered in Chicago, Illinois.

24. On September 2, 2021, Hill-Rom and Baxter jointly announced that they had entered into a proposed transaction:

> DEERFIELD, Ill.& CHICAGO--(BUSINESS WIRE)-- Baxter International Inc. (NYSE:BAX), a leading global medical products company, and Hillrom (NYSE:HRC), a global medical technology leader, today announced that the companies have entered into a definitive agreement under which Baxter has agreed to acquire Hillrom for $156.00 per share in cash for a total equity value of approximately $10.5 billion and a total enterprise value of approximately $12.4 billion, including the assumption of debt.
>
> Hillrom brings a highly complementary product portfolio and innovation pipeline that will enable Baxter to provide a broader array of medical products and services to patients and clinicians across the care continuum and around the world, facilitating the delivery of healthcare that is patient- and customer-centered and focused on improving clinical outcomes. The combination is also expected to accelerate the companies' expansion into digital and connected care solutions that are increasingly enabling patients with access to hospital-level care at home or in other care settings.

"Baxter and Hillrom share a common vision for transforming healthcare to better serve all patients and providers," said José (Joe) E. Almeida, Baxter's chairman, president and chief executive officer. "Patients increasingly want to receive their care at home or nearby, while hospitals and other care providers are increasingly using digital health technologies to expand access, improve quality and lower costs. Baxter and Hillrom are uniting to meet the challenges of a rapidly evolving global healthcare landscape, while also creating significant value for all the stakeholders we serve. We're very excited to welcome the Hillrom team to Baxter, and to join together to advance our mission to save and sustain lives."

John Groetelaars, Hillrom's president and chief executive officer, said, "We are proud of the steps we have taken to transform Hillrom into a medical technology leader with an innovative portfolio of connected care solutions. Today's milestone announcement represents a win-win for all stakeholders. Patients and caregivers will benefit from enhanced capabilities across the continuum of care, our shareholders will receive a significant and immediate premium for their investment, and our employees will benefit from being part of a larger, stronger company with accelerated growth opportunities. Baxter is the ideal partner to enhance our global reach and realize the true potential of our vision to accelerate medical innovation around the world. With our shared patient-centric cultures, we look forward to seamlessly bringing our two companies together."

**Strategic Rationale**
The Baxter-Hillrom combination will expand access to Hillrom's portfolio globally; broaden the presence of the combined companies across sites of care; accelerate and strengthen the combined organization's digital transformation; and is expected to generate compelling financial returns for Baxter's shareholders.

Key benefits of the acquisition include:

- ***A common vision for transforming healthcare to improve efficiencies and clinical outcomes, drive actionable insights and lead across the care continuum:*** The complementary product offering of the combined companies will support the patient in the hospital, at home, and in alternate sites of care, allowing better integration and coordination of healthcare delivery.
- ***A strengthened portfolio with opportunity to accelerate digitally-enabled connected healthcare and expand penetration of combined solutions worldwide:*** The companies' combined capabilities in therapeutic delivery, monitoring, blood purification, diagnostics and communications for patients and caregivers will enhance opportunities for truly connected care that result in better

6

patient outcomes, improved workflow efficiencies and data-driven insights while lowering healthcare costs overall.

- ***A robust combined platform for shareholder value creation through meaningful anticipated synergies with a continued commitment to strong cash flow generation:*** The transaction provides a significant opportunity to build upon Baxter's established global infrastructure to grow Hillrom's international business, which currently represents approximately one-third of Hillrom's total 2020 revenue. It should also meaningfully enhance Baxter's earnings growth through the realization of substantial cost synergies and potential opportunities to accelerate revenue growth over the longer term.

- ***A shared culture that values inclusivity, innovation and corporate responsibility:*** The combination unites two organizations that have each been recognized for achievements in workplace diversity and corporate responsibility, and for fostering an environment that supports and encourages high performance, respect for individuals, and professional growth.

**Transaction Highlights**

Upon completion of the transaction, Baxter will pay $156.00 in cash for each outstanding share of Hillrom common stock for a purchase price of $10.5 billion. Baxter will also assume Hillrom's outstanding debt and cash, for a total enterprise value of $12.4 billion. The purchase price represents a 26% premium to Hillrom's closing stock price on July 27, 2021, the last trading day prior to media reports speculating about a potential transaction.

Baxter expects the combination to result in approximately $250 million of annual pre-tax cost synergies by the end of year three. This estimate excludes any benefit from potential new revenue growth opportunities resulting from the combination of the two organizations.

The transaction is expected to be low double-digit accretive to Baxter's adjusted earnings per share (EPS) in the first full year post close, increasing to more than 20% by year three. The transaction is also expected to expand Baxter's overall adjusted EBITDA margins over the medium-term and deliver strong cash flow generation with a high single-digit return on invested capital (ROIC) expected by year five.

Baxter will finance the transaction through a combination of cash and fully committed debt financing. At closing, Baxter estimates that it will have net leverage of approximately 4.2x net debt to pro forma[1] adjusted EBITDA of the combined companies (as estimated by Baxter management). Baxter is committed to an investment grade

credit rating and deleveraging to 2.75x net leverage within two years of closing.

**Approvals and Timing**

The Boards of Directors of both companies have unanimously approved the acquisition. The transaction is subject to the approval of Hillrom shareholders and the satisfaction of customary closing conditions, including regulatory approvals. The transaction is expected to close by early 2022.

**Baxter Long-term Financial Guidance and 2021 Investor Conference Update**

As a result of the proposed acquisition, Baxter's 2021 Investor Conference, originally scheduled for Sept. 20, will be rescheduled to a date following the transaction's completion. This will allow Baxter to provide an updated strategic and financial outlook inclusive of the combined organizations.

In the interim, Baxter is issuing long-term financial guidance as a standalone entity. Baxter expects sales to grow 4-5%, compounded annually from 2021 to 2024 based on current foreign exchange rates. Over this period, Baxter anticipates expanding its adjusted operating margin by 300 basis points or more. On an adjusted basis, Baxter expects to deliver earnings growth of low double digits compounded annually over the same period. This Baxter standalone guidance does not reflect any impact from the proposed acquisition.

**Advisors**

Perella Weinberg Partners LP is acting as lead financial advisor to Baxter. J.P. Morgan and Citi are also serving as financial advisors to Baxter and have committed to provide fully committed financing. Sullivan & Cromwell LLP is serving as legal advisor to Baxter. Goldman, Sachs & Co. LLC is serving as lead financial advisor and BofA Securities is serving as financial advisor to Hillrom. Wachtell, Lipton, Rosen & Katz is serving as legal advisor to Hillrom.

\* \* \*

25.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Hill-Rom's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**    **The Materially Incomplete and Misleading Proxy Statement**

26.    On October 1, 2021, Hill-Rom filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Hill-Rom Financial Projections*

27.    The Proxy Statement fails to provide material information concerning financial projections by Hill-Rom management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Hill-Rom management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, Adjusted Operating Income, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics **and/or** a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

31.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Goldman Sachs' Financial Analysis*

32.     With respect to Goldman Sachs' *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) a range of illustrative terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates of 1.0% to 2.0%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 7.5% to 8.5%; (iv) the Company's weighted average cost of capital.

33.     With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the basis for applying enterprise value to NTM Adjusted EBITDA multiples of 13.0x to 15.0x Adjusted EBITDA per share of Company common stock; (ii) the basis for applying an illustrative discount rate of 7.9%; and (iii) the Company's cost of equity.

34.     With respect to Goldman Sachs' *Premia Analysis*, the Proxy Statement fails to disclose: (i) the premiums of the price paid in the transactions observed; and (ii) the transactions selected for the analysis.

*Omissions and/or Material Misrepresentations Concerning BofA's Financial Analysis*

35.     With respect to BofA's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose: (i) the enterprise values for each of the selected companies and for Hill-Rom; (ii) the closing share price of each company on August 30, 2021; (iii) the number of fully-diluted shares outstanding of each company; (iv) each company's net debt or net cash; and (v) the

basis for applying a 2021E EV/EBITDA multiple reference range of 14.5x to 18.5x to Hill-Rom management's estimates of calendar year 2021 Adjusted EBITDA, and a 2022E EV/EBITDA multiple reference range of 13.0x to 17.0x to Hill-Rom management's estimates of calendar year 2022 Adjusted EBITDA.

36.     With respect to BofA's *Selected Precedent Transactions Analysis* for the Company, the Proxy Statement fails to disclose the metrics and multiples of each transaction observed in the analysis.

37.     With respect to BofA's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying the range of discount rates ranging from 7.0% to 9.0%; (iii) the Company's weighted average cost of capital; (iv) the basis for applying a selected range of EBITDA exit multiples of 10.0x to 15.0x; (v) net debt of Hill-Rom as of June 30, 2021; and (vi) the number of fully diluted outstanding shares of Hill-Rom common stock.

38.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

41.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by the financial advisors and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

42.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

43.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were

negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

44.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     The Individual Defendants acted as controlling persons of Hill-Rom within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Hill-Rom, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Hill-Rom, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Hill-Rom, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

49.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 4, 2021                          **MELWANI & CHAN LLP**

                                                        By:   /s *Gloria Kui Melwani*
                                                        Gloria Kui Melwani (GM5661)
                                                        1180 Avenue of Americas, 8th Fl.
                                                        New York, NY 10036
                                                        Telephone: (212) 382-4620

Email: gloria@melwanichan.com

*Attorneys for Plaintiff*